UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARQUARION HENDERSON,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

    Defendants.
_____/

Case No. 1:20-cv-22

Hon. Janet T. Neff

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Darquarion Henderson (referred to as "plaintiff" or "Henderson"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Henderson's complaint involves incidents which occurred while he was incarcerated at Ionia Correctional Facility (ICF) and the Marquette Branch Prison (MBP). Plaintiff sued the MDOC and several ICF employees: Warden John Davids; Assistant Deputy Warden (ADW) Charles Traylor (named in the complaint as "Unknown Taylor"); Resident Unit Manager (RUM) Unknown Oversmith; Assistant Resident Unit Manager (ARUM) Unknown Haynes; and Security Classification Committee (SCC) Members John Doe A, John Doe B, and John Doe C. *See* Opinion (ECF No. 9, PageID.87). Plaintiff's 8th Amendment claims against Defendants Davids, Taylor, Oversmith, Haynes, and John Does A-C remain in the case. *Id*. at PageID.91.

    **I.**    **Background**

The Court summarized plaintiff's claims against defendants as follows:

1

> Plaintiff alleges that on February 14, 2019, he reported to MBP officials that he had renounced a known security threat group (STG) and, as a result, that he was in danger. Plaintiff was not classified to protection during the following month. On March 15, 2019, Plaintiff was assaulted at MBP, and the MBP SCC classified him to protection. Soon thereafter, Plaintiff was transferred to ICF.
>
> Plaintiff was attacked twice after his transfer to ICF. First, Plaintiff was assaulted on August 25, 2019. The following day, August 26, 2019, Plaintiff was stabbed. Plaintiff explained to an investigator on August 30, 2019, that his transfer to ICF did not eliminate the threats the STG posed to his safety, and Plaintiff asserted that he would be attacked again. On the same day, Plaintiff informed the ICF SCC – Defendants Doe A, Doe B, and Doe C – that other inmates had been ordered to kill him. Plaintiff alleges that ICF administration ignored his concerns and requests for protection and instead returned Plaintiff to the general population.
>
> On November 14, 2019, Plaintiff informed Defendant Haynes that he was not safe while housed in general population at ICF. Plaintiff alleges that Defendant Haynes never responded. Plaintiff filed a grievance on November 19, 2019, against Defendant Haynes and the ICF administration for ignoring his requests for protection.
>
> On November 21, 2019, Plaintiff filed a grievance against Defendant Davids "for ignoring a letter Plaintiff sent Davids over the generation of special problem offender notifications (SPONS) to ensure that Plaintiff's prior assailants were kept separate[]" from Plaintiff. (Compl., ECF No. 1, PageID.10.) Plaintiff attempted to submit another grievance on November 25, 2019, complaining of ICF administration's failure to generate a SPON. Plaintiff asserts, however, that the grievance coordinator reported never receiving this grievance.
>
> On approximately December 9, 2019, Defendant Oversmith responded to Plaintiff's grievances. Defendant Oversmith acknowledged Plaintiff's concerns but explained that because Plaintiff had not been attacked since August 26, 2019, Plaintiff failed to demonstrate that he remained at serious risk in order to justify protection or transfer. Plaintiff additionally alleges that Defendant Davids denied at least one of Plaintiff's step-two grievances in which Plaintiff contended that he needed protection.

Opinion at PageID.87-88.

## II.     Defendants' motion for summary judgment

2

### A. Legal standard for summary judgment

Defendants Warden Davids, ADW Traylor, and RUM Oversmith seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

3

1.      **Exhaustion requirement**

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

2.      **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the

4

grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

        **3.**        **Discussion**

Henderson's grievance history set out in his MDOC Prisoner Step III Grievance Report (ECF No. 26-3, PageID.156), lists only one grievance which Henderson pursued through Step III, that being ICF-19-11-1940-03B ("1940"). *Id.* Grievance 1940 involved an incident date of November 14, 2019. Grievance 1940 (ECF No. 26-3, PageID.160). This grievance appears directed at ARUM Haynes (named in the grievance as ARUS Haynes). *Id.* In the grievance, plaintiff stated that he sent a kite to Haynes over his situation (being subjected to cruel

5

and unusual punishment and being stabbed while as ICF). *Id*. However, Haynes ignored him. *Id*.[1]

Defendants Davids, Traylor, and Oversmith seek summary judgment because Henderson did not properly exhaust a grievance against them, *i.e.*, Henderson did not name them in Grievance 1940 as required by PD 03.02.130 ¶ S. In his response, Henderson states that he "did in fact mail out by First Class U.S. Mail his Step III Grievance to the MDOC Grievance Coordinator." Henderson Response (ECF No. 29, PageID.171; Henderson affidavit/declaration (ECF No. 29-1). In their reply, defendants Davids, Traylor and Oversmith point out that Henderson's response is unsupported by any evidence,

> In his response, Henderson indicates repeatedly that he filed a grievance regarding his complaint allegations through all 3 Steps but then fails to provide this Court with the grievance identifier number or even a copy of any grievance step.

Defendants' Reply (ECF No. 30, PageID.179).

In addition, these defendants point out that their only involvement was in responding to Henderson's grievance directed against defendant Haynes:

> In reality, these Defendants were only involved in responding to that grievance. RUM Oversmith completed the initial grievance response and her supervisor, ADW Traylor reviewed that response to ensure it complied with policy requirements. (ECF No. 26-3, PageID.160-161). Unsatisfied with that response, Henderson appealed, and Warden Davids promptly responded. (ECF No. 26-3, PageID.158-159).

*Id*. at PageID.180.[2]

---

[1] The Court notes that defendant Haynes has filed his own motion for summary judgment for lack of exhaustion (ECF No. 37). This report does not address the issue of whether plaintiff properly exhausted a claim against Haynes.

[2] In this regard, the Court notes that a prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003).

Based on this record, plaintiff did not properly exhaust a grievance against defendants Warden Davids, ADW Traylor, or RUM Oversmith. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants Davids, Traylor, and Oversmith's motion for summary judgment (ECF No. 25) be **GRANTED** and that these defendants be **DISMISSED** from this action.

Dated:  November 1, 2021                     /s/ Ray Kent
                                             RAY KENT
                                             United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).