UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARQUARION HENDERSON,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

    Defendants.

Case No. 1:20-cv-22

Hon. Janet T. Neff

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Darquarion Henderson ("plaintiff" or "Henderson"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Henderson's complaint involves incidents which occurred while he was incarcerated at Ionia Correctional Facility (ICF) and the Marquette Branch Prison (MBP). Plaintiff sued the MDOC and several ICF employees: Warden Davids; Assistant Deputy Warden Traylor; Resident Unit Manager Oversmith; Assistant Resident Unit Manager Haynes; and Security Classification Committee (SCC) Members John Does A, B, and C.[1] *See* Opinion (ECF No. 9, PageID.87). All claims have been dismissed except Henderson's Eighth Amendment claim against Haynes for failing to protect him. *Id.* at PageID.91; Order (ECF No. 42).

**I.**     **Background**

The Court summarized Henderson's claims as follows:

---

[1] John Does A, B, and C are not parties to this lawsuit. "Doe defendants are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." *Hindes v. FDIC*, 137 F.3d 148, 155 (3rd Cir. 1998) (internal quotation and citation omitted).

1

> Plaintiff alleges that on February 14, 2019, he reported to MBP officials that he had renounced a known security threat group (STG) and, as a result, that he was in danger. Plaintiff was not classified to protection during the following month. On March 15, 2019, Plaintiff was assaulted at MBP, and the MBP SCC classified him to protection. Soon thereafter, Plaintiff was transferred to ICF.
>
> Plaintiff was attacked twice after his transfer to ICF. First, Plaintiff was assaulted on August 25, 2019. The following day, August 26, 2019, Plaintiff was stabbed. Plaintiff explained to an investigator on August 30, 2019, that his transfer to ICF did not eliminate the threats the STG posed to his safety, and Plaintiff asserted that he would be attacked again. On the same day, Plaintiff informed the ICF SCC – Defendants Doe A, Doe B, and Doe C – that other inmates had been ordered to kill him. Plaintiff alleges that ICF administration ignored his concerns and requests for protection and instead returned Plaintiff to the general population.
>
> On November 14, 2019, Plaintiff informed Defendant Haynes that he was not safe while housed in general population at ICF. Plaintiff alleges that Defendant Haynes never responded. Plaintiff filed a grievance on November 19, 2019, against Defendant Haynes and the ICF administration for ignoring his requests for protection.
>
> On November 21, 2019, Plaintiff filed a grievance against Defendant Davids "for ignoring a letter Plaintiff sent Davids over the generation of special problem offender notifications (SPONS) to ensure that Plaintiff's prior assailants were kept separate[]" from Plaintiff. (Compl., ECF No. 1, PageID.10.) Plaintiff attempted to submit another grievance on November 25, 2019, complaining of ICF administration's failure to generate a SPON. Plaintiff asserts, however, that the grievance coordinator reported never receiving this grievance.
>
> On approximately December 9, 2019, Defendant Oversmith responded to Plaintiff's grievances. Defendant Oversmith acknowledged Plaintiff's concerns but explained that because Plaintiff had not been attacked since August 26, 2019, Plaintiff failed to demonstrate that he remained at serious risk in order to justify protection or transfer. Plaintiff additionally alleges that Defendant Davids denied at least one of Plaintiff's step-two grievances in which Plaintiff contended that he needed protection.

Opinion at PageID.87-88. Henderson seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages. Compl. (ECF No. 1, PageID.19-20).

## II.     Defendant Haynes' motion for or summary judgment

### A.     Legal standard for summary judgment

Defendant Haynes seeks summary judgment on the ground that Henderson failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

3

### B. Failure to Exhaust

### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive (PD) 03.02.130 (effective March 18, 2019). A prisoner must first attempt to

resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

       **3.**    **Discussion**

Henderson pursued one grievance through Step III, that being ICF-19-11-1940-03B ("1940"). *See* MDOC Prisoner Step III Grievance Report (ECF No. 26-3, PageID.156). Grievance 1940 involved an incident date of November 14, 2019. *See* Grievance 1940 (ECF No. 26-3, PageID.160). Henderson directed his grievance at "this administration" and "this agency" for failing to have another facility which could accommodate his medical treatment and failing to change his security level to protect him (in his words):

5

> Prisoner is being subject to cruel and unusual punishment in violation of his constitutional rights. Prisoner was assaulted at MBP and sent to ICF as a protection case. While at ICF he was assaulted and then again stabbed. An investigation for protection was completed and this administration documented he had a legitimate protection need but because he was on medication he was ineligible for placement any where else. It is not prisoners fault that this agency only has two level OPT prisons. Since prisoner had documented enemies of gang related activity on this yard he should have been transferred or his level waived to a 4 to accommodate his protection needs.

*Id*.

Henderson identified Haynes as the staff member he contacted to resolve the issue prior to filing the grievance. In response to the question, "What attempt did you make to resolve the issue prior to writing this grievance,?" Henderson stated that on November 14, 2019: "Prisoner sent a kite to ARUS Haynes over his situation an [sic] she ignored him. Sent a second kite and informed her of PD 05.01.140 and that he should have been transferred." *See* Grievance 1940 at PageID.160.

MDOC officials interviewed Henderson with respect to the grievance. *Id*. at PageID.161. After reviewing Henderson's history, the officials denied the grievance because it had no merit. *Id*. The denial was affirmed at Steps II and III. *Id*. at PageID.157-159.

In support of her motion for summary judgment, Haynes adopted the arguments set forth in the brief filed by co-defendants Davids, Traylor, and Oversmith, all of whom sought summary judgment because Henderson did not properly exhaust a grievance against them, *i.e.*, Henderson did not name them in Grievance 1940 as required by PD 03.02.130 ¶ S. *See* Defendant's Brief (ECF No. 38, PageID.196). In his response, Henderson stated that on November 14, 2019, he "informed Defendant Haynes that he was not safe while housed in General population at ICF," that Haynes never responded, and that he filed a grievance "against Defendant

6

Haynes and the ICF SCC, Grievance No. ICF-19-11-1940-03B for ignoring his request for protection." Henderson's Response (ECF No. 47, PageID.223).

It appears that Henderson attempted to resolve the issue with Haynes pursuant to PD 03.02.130 ¶ Q, which provides,

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

While Haynes was not named in the body of the grievance, Henderson attempted to resolve the issue with Haynes as "the staff member involved" under ¶ Q. Haynes does not address whether this reference is sufficient to include her as part of the ICF "administration" being grieved in Grievance 1940. Rather, her brief states that "PC Nakita Haynes now moves for summary judgment as Henderson did not name her in any grievance" and adopts the earlier brief submitted by her co-defendants. *See* Haynes' Brief at PageID.195-196. Based on this record, a genuine issue of material fact exists as to whether Haynes was identified as a party being grieved, *i.e.*, an individual "involved in the issue being grieved." *See* PD 03.02.130 ¶ S.

Assuming, for purposes of this report, that Haynes was named as a party being grieved, Haynes contends in her reply brief that Henderson failed to properly exhaust a grievance before filing this action. The exhaustion requirement is found in 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

7

Haynes characterizes Henderson's failure to exhaust his grievance before filing the complaint as a failure to properly exhaust that grievance under the MDOC's policy. *See* Haynes' Reply (ECF No. 49, PageID.240) ("Henderson has not properly exhausted since he did not follow the procedures of the policy by filing a Step III grievance appeal prior to filing this lawsuit."). The Court does not agree with Haynes' characterization of the exhaustion issue. Whether Henderson complied with the state procedure for exhaustion (*i.e.*, the three-step grievance process in PD 03.02.130) is a separate question from whether Henderson complied with the statutory requirement of 42 U.S.C. § 1997e(a) (*i.e.*, a prisoner must properly exhaust "such administrative remedies as are available" before filing an action). *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

Here, Henderson appeared to exhaust Grievance 1940 through Step III of the MDOC's grievance procedure as set forth in PD 03.02.130. Haynes does not identify any MDOC deadline or "other critical procedural rule" that Henderson missed. However, Henderson failed to comply with 42 U.S.C. § 1997e(a), because he filed the present § 1983 action two months before he exhausted Grievance 1940. It is well established that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). The court explained,

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the [42 U.S.C. § 1997e(a)] makes exhaustion a

8

> precondition to filing an action in federal court ("No action shall be brought . . . until such administrative remedies as are available are exhausted.").

*Id*.

In summary, the MDOC denied Henderson's Step III appeal on March 9, 2020. *See* Grievance 1940 at PageID.157-158, 162-166. Henderson filed this action on January 10, 2020, nearly two months before he exhausted Grievance 1940. Henderson did not exhaust a grievance against Haynes before filing this action as required by 42 U.S.C. § 1997e(a). Henderson failed to meet the statutory precondition for filing his action. Accordingly, Haynes' motion for summary judgment should be granted on that basis.

### III.    Henderson's supplement and motions related to exhaustion

Henderson filed various papers in an apparent attempt to salvage his prematurely filed complaint.

#### A.    Doe defendants

On January 26, 2022, Henderson filed a "supplement" (ECF No. 48), in which he identified the three John Doe defendants as SCC members Luther, Sandbern, and Barber. The identification of the Doe defendants has no effect on the exhaustion.

#### B.    Motion for leave to file an amended complaint

On March 3, 2022, more than two years after filing this lawsuit, Henderson moved for leave to file an amended complaint, pointing out that he exhausted administrative remedies after filing the lawsuit (ECF No. 54, PageID.265-270). Fed. R. Civ. P. 15(a)(2) provides that a party may amend its pleading with the court's leave and that "[t]he court should freely give leave when justice so requires." Justice does not require that Henderson be allowed to amend his complaint. Henderson's proposed amendment appears to be an attempt to circumvent the

9

exhaustion requirement set forth in 42 U.S.C. § 1997e(a). Henderson cannot bypass the exhaustion requirement by filing an amended complaint stating that he has now exhausted the claims alleged in the original complaint. Accordingly, Henderson's motion for leave to file an amended complaint (ECF No. 54) should be denied.

### C.     Motion for leave to file a supplemental complaint

Finally, Henderson moved for leave to file a supplemental complaint (ECF No. 55) which consists of two paragraphs:

> 31.    On 2-24-20 plaintiff was assaulted by seven (7) prisoners at ICF (see Exhibit H)[.]
>
> 32.    On 2-24-20 plaintiff was tasered in the face by an ICF employee while being assaulted by 7 prisoners (see Exhibit I)[.]

Proposed Supplemental Comp. (ECF No. 55-1, PageID.275).[2]

The new incidents alleged in the supplemental paragraphs occurred on January 24, 2020, after Henderson filed the original complaint (January 10, 2020) and before Henderson exhausted Grievance 1940 (March 9, 2020). Fed. R. Civ. P. 15 allows a party to file a supplemental pleading, stating that:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

---

[2] It is unclear how these paragraphs fit into the complaint, which already contains ¶¶ 31 and 32.  *See* PageID.14.

Henderson cannot file a supplemental complaint because he failed to exhaust any claims before filing the original complaint. While Fed. R. Civ. P. 15(d) authorizes a court to permit a party to supplement a pleading "even though the original pleading is defective in stating a claim or defense," that rule "does not and cannot overrule a substantive requirement or restriction contained in a statute." *Harris v. Garner*, 216 F.3d 970, 983 (11th Cir. 2000). Here, Henderson's complaint did not meet the substantive requirement of 42 U.S.C. § 1997e(a), because it did not contain an exhausted claim against Haynes. Henderson cannot supplement a complaint which failed to comply with the requirements set forth in 42 U.S.C. § 1997e(a). *See Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) ("[W]e hold that the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, *provided that the plaintiff's original complaint contained at least one fully exhausted claim*) (emphasis added).[3] Accordingly, Henderson's motion for leave to file a supplemental complaint (ECF No. 55) should be denied.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Haynes' motion for summary judgment (ECF No. 37) be **GRANTED**, that plaintiff Henderson's motions for leave to file an amended complaint (ECF No. 54) and for leave to file a supplemental complaint (ECF No. 55) be **DENIED**, and that this action be terminated.

Dated: May 12, 2022                    /s/ Ray Kent
                                        RAY KENT
                                        United States Magistrate Judge

---

[3] In reaching this determination, the Sixth Circuit affirmed the continued vitality of its decision in *Freeman*. *See Mattox*, 851 F.3d at 594 ("In *Freeman* . . . the plaintiff had not properly exhausted any claims before filing the original complaint. 196 F.3d at 642. *Freeman* thus does not speak to the issue of whether an inmate can add newly exhausted claims to a lawsuit originally based on separate, fully exhausted claims.").

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).